**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ABDUL WARIS AKINSANYA,

    Defendant - Appellant.

No. 25-6124
(D.C. Nos. 5:25-CV-00125-HE &
5:23-CR-00202-HE-1)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BACHARACH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Abdul Akinsanya seeks a certificate of appealability (COA) to challenge the

district court's order denying his 28 U.S.C. § 2255 motion. Because his appeal depends

on contesting the district court's factual findings—and no reasonable jurist would debate

those findings—we deny his COA request and dismiss this matter.

**Background**

In May 2023, the government charged Akinsanya with one count of conspiracy to

commit mail fraud, 18 U.S.C. §§ 371, 1341, in connection with online "romance scams."

R. vol. 1, 13. Pursuant to an agreement negotiated by his trial counsel, Akinsanya pleaded

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

guilty, stipulated to a loss amount of $200,000, and was sentenced to 18 months in prison.

Akinsanya later filed a timely pro se motion to vacate his conviction under § 2255, raising four violations of his Sixth Amendment right to effective assistance of counsel. As relevant here, he claimed that his attorney failed to discharge his duty under *Padilla v. Kentucky*, 559 U.S. 356 (2010), to advise Akinsanya of the immigration consequences of his plea. Akinsanya is a Nigerian citizen, and his conviction qualified as an "aggravated felony" under immigration law—meaning it would make his deportation a "virtual certainty."[1] *Sessions v. Dimaya*, 584 U.S. 148, 153 (2018). But according to Akinsanya, trial counsel never gave him this critical information.

---

[1] As relevant here, a conviction qualifies as an aggravated felony if it "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Determining whether an offense meets that definition is a two-part inquiry.

We first apply the categorical approach to determine whether an offense "involv[es] fraud or deceit." *Kawashima v. Holder*, 565 U.S. 478, 4883 (2012). The statute of conviction here, § 371, criminalizes conspiracy "either to commit any offense against the United States, or to defraud the United States." The Board of Immigration Appeals has held that because the "offense" and "defraud" clauses represent two separate ways to violate § 371, the modified categorical approach applies to the initial inquiry, permitting courts a limited look at the record to determine which clause the defendant violated. *See Matter of Nemis*, 28 I. & N. Dec. 250, 252–54 (B.I.A. 2021). Here, the records of Akinsanya's conviction reflect that he pleaded guilty to violating the "offense" clause. So determining whether his conviction categorically "involves fraud or deceit" means looking beyond § 371 to the predicate criminal statute he conspired to violate: here, § 1341. *See id.* at 254; *United States v. Ochoa*, 861 F.3d 1010, 1015–16 & n.1 (9th Cir. 2017) (analyzing predicate criminal statute to determine whether § 371 conviction qualified as aggravated felony). That statute, which criminalizes mail fraud, incorporates fraud or deceit as an element, thereby satisfying the categorical component of the inquiry. *See* § 1341.

We next look to "the specific circumstances surrounding an offender's commission of a fraud" to assess whether the associated losses exceed $10,000. *Nijhawan*

To resolve this claim, the district court appointed Akinsanya new counsel and conducted an evidentiary hearing at which both Akinsanya and his original trial counsel testified. After hearing both parties' evidence and arguments, the district court expressed skepticism that "there was any requirement at all for counsel or the [district c]ourt or anybody to tell the defendant that you have mandatory consequences from the circumstances he was in." R. vol. 3, 57. Leaving that question aside, however, the district court found that trial counsel advised Akinsanya "that he would be deported, given the fact that [the plea was to] a fraud conviction and that it involved a substantial amount of loss." *Id.* at 59. Additionally, it found that trial counsel "tr[ied] to get precisely the kind of an agreement with the government that would have solved the problem that the defendant . . . now seems to be facing." *Id.* at 58–59. Considering those factual findings, the district court concluded Akinsanya had failed to establish a Sixth Amendment violation and denied both the § 2255 motion and a COA.

Akinsanya now requests a COA from this court. *See* 28 U.S.C. § 2253(c)(1)(B).

## Analysis

We will grant a COA if an "applicant . . . show[s] that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

---

*v. Holder*, 557 U.S. 29, 40 (2009). And here, Akinsanya stipulated that his offense generated $200,000 in losses. Accordingly, his conviction qualified as an aggravated felony under § 1101(a)(43)(M)(i).

further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Akinsanya argues that he meets this standard because reasonable jurists could debate whether counsel's failure to warn him of his plea's "mandatory deportation consequences" violated the Sixth Amendment.[2] Aplt. Br. 11. As his own framing of the argument suggests, this claim relies on the underlying premise that counsel did not, in fact, warn him that "he would be deported"—a premise that directly contradicts the district court's factual finding on this point. R. vol. 3, 59.

Further, and contrary to Akinsanya's insinuations, that finding is well-supported by the record. Trial counsel testified that he both "consult[ed] with an immigration attorney on [Akinsanya's] case" and referred Akinsanya to "[a] couple of different immigration attorneys." *Id.* at 13. But he did not offload or ignore his duty to investigate, advise of, and defend Akinsanya against potential immigration consequences. "[A]ware that certain aggravated[-]felony offenses . . . trigger a mandatory deportation," *id.* at 10, trial counsel informed Akinsanya that a "conviction . . . involving fraud and significant amounts of money," *id.* at 13—specifically, amounts over the "$10,000 . . . threshold," *id.* at 15—"would result in his mandatory removal from the United States," *id.* at 13.

Although Akinsanya disputed that version of events in his testimony, the district court found trial counsel "credible." *Id.* at 58. Trial counsel's comprehension of and

---

[2] Although we have not specifically held that such a warning is required under *Padilla*, we will assume as much for purposes of this discussion.

attention to the immigration consequences of Akinsanya's plea was consistent, the district court observed, with the lengths counsel went to negotiate "some agreed disposition that would result in the defendant not being subject to mandatory deportation." *Id.* Indeed, on cross-examination, trial counsel described "search[ing] through federal statutes . . . to try and find criminal offenses that [he] thought would fit the fact pattern in the case and . . . that did not involve fraud allegations . . . or monetary amounts, because [he] knew those were the things that would trigger the immigration consequences that [Akinsanya was] concerned about." *Id.* at 17. He said he "discuss[ed] that strategy with . . . Akinsanya" and, when his efforts bore no fruit, explained to Akinsanya "the immigration consequences of the plea agreement that had been offered by the government," as he did "[e]very time [they] discussed plea agreements or plea proposals." *Id.* at 17–18.

Given this persuasive testimony, no reasonable jurist would conclude that trial counsel failed to inform Akinsanya that entering his guilty plea would subject him to mandatory deportation. And since there is no dispute as to that fact, there is also no room for debate about the outcome of Akinsanya's *Padilla* challenge.[3]

---

[3] Akinsanya obliquely suggests that his ignorance of the immigration consequences also undermined the knowing and voluntary nature of his plea—raising an argument sounding in due process. But given his explicit concession that his appeal concerns only his Sixth Amendment *Padilla* challenge, his failure to adequately brief the due-process issue on appeal, and the absence of any due-process claim in his § 2255 motion, we do not address due process here.

## Conclusion

We deny Akinsanya's COA request and dismiss this appeal.


Entered for the Court


Nancy L. Moritz
Circuit Judge